

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-24-00405-CV

**IN THE INTEREST OF A.F.M.**, a Child

From the 456th District Court, Guadalupe County, Texas
Trial Court No. 23-1600-CV-E
Honorable Thomas Nathaniel Stuckey, Judge Presiding

Opinion by:   Irene Rios, Justice

Sitting:   Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: December 4, 2024

AFFIRMED AS MODIFIED

Appellant Father appeals the trial court's order terminating his parental rights to his child, A.F.M.[1]  In his sole issue, Father challenges the sufficiency of the evidence supporting termination of his parental rights under subsection 161.001(b)(1)(D) of the Texas Family Code.  We modify the trial court's order to strike the statutory ground (D) finding and affirm the termination order as modified.

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the parents as "Father" and "Mother" and we refer to children using their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).  We also refer to A.F.M. as "the child."  The trial court order terminates Mother's and Father's parental rights to the child, but only Father appeals the trial court's order.

## BACKGROUND

The Department became involved in the underlying case when it learned Mother was physically abusing A.F.M.  On June 26, 2023, the Department filed a petition seeking termination of Father's parental rights.  The trial court held a bench trial on May 15, 2024 and June 5, 2024. The trial court heard testimony from Father and the Department's caseworker, Sarah Kennedy.[2]

On June 10, 2024, the trial court signed an order terminating Father's parental rights to A.F.M.  The trial court terminated Father's parental rights based on statutory grounds (D), (N), and (O) in subsection 161.001(b)(1) of the Texas Family Code.  *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (N), (O).  The trial court also found it was in the child's best interest to terminate Father's parental rights. *See id.* § 161.001(b)(2).  Father appeals.

## STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b).  Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review.  *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

---

[2] The caseworker is employed by SJRC Texas Belong, a community-based care provider contracted by the Department.  Nevertheless, we refer to Sarah Kennedy as the Department's caseworker because SJRC Texas Belong is a contractor on behalf of the Department.

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *In re J.F.-G.*, 627 S.W.3d 304, 312, 317 (Tex. 2021). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely

reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's factual determinations and judgment regarding credibility. *J.F.-G.*, 627 S.W.3d at 312; *see also In re R.R.A.*, 687 S.W.3d 269, 279 n.50 (Tex. 2024) ("Reviewing courts, however, must defer to the factfinder's judgment as to the credibility of the witnesses and the weight to give their testimony, including reasonable and logical inferences from the evidence.").

### STATUTORY GROUNDS FOR TERMINATION

In his sole issue, Father argues there is insufficient evidence to support the trial court's finding under subsection 161.001(b)(1)(D) of the Texas Family Code.

Only one predicate ground finding under subsection 161.001(b)(1) is necessary to support a termination judgment when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Because Father does not challenge the trial court's findings under statutory grounds (N) and (O), we may affirm on those grounds alone. *Id.*; *In re I.E.P.*, No. 04-24-00255-CV, 2024 WL 3802517, at *2 (Tex. App.—San Antonio Aug. 14, 2024, no pet.). However, because findings under either subsections 161.001(b)(1)(D) or (E) have consequences for termination of parental rights as to other children, termination on these grounds implicate significant due process concerns for parents. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E), (M); *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019). Therefore, when challenged on appeal, due process requires us to review the trial court's findings under subsections 161.001(b)(1)(D) and (E) of the Texas Family Code. *See N.G.*, 577 S.W.3d at 235–36; *see also R.R.A.*, 687 S.W.3d at 279 ("Although termination under (P) is sufficient to reverse the judgment of the court of appeals, we must also review termination under subsections (D) and (E) because a

finding of termination under those grounds may justify termination of parental rights to other children in subsection (M).”); *In re J.W.*, 645 S.W.3d 726, 748 (Tex. 2022) (“[W]e may not bypass Father’s evidentiary challenges to [s]ubsections (D) and (E) . . . because termination of a parent’s rights under either can serve as a ground for termination of his rights to *another* child.”).

Here, the trial court found sufficient evidence to support termination of Father’s parental rights under subsection (D). Subsection (D) allows for termination of parental rights if the parent “knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]” TEX. FAM. CODE ANN. § 161.001(b)(1)(D). To endanger a child under subsection (D) means to expose the child to loss or injury or to jeopardize the child’s emotional or physical health. *See J.W.*, 645 S.W.3d at 748; *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). “Although endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it does not require that there be conduct directed at the child or that the child actually suffer injury.” *J.W.*, 645 S.W.3d at 748 (internal quotation marks and alterations omitted).

Subsection (D) concerns the child’s living environment, rather than the conduct of the parent, though parental conduct is certainly relevant to the child’s environment. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Under Subsection (D), the trial court examines “evidence related to the environment of the child[] to determine if the environment was the source of endangerment to the [child’s] physical or emotional well-being.” *Id.* The child’s “environment” encompasses the suitability of the child’s living conditions and the conduct of parents or others in the home. *S.R.*, 452 S.W.3d at 360. Inappropriate, abusive, or unlawful conduct by a parent or other persons who live in the child’s home can create an environment that

endangers the physical and emotional well-being of a child as required for termination under subsection D. *In re A.L.S.*, 660 S.W.3d 257, 271 (Tex. App.—San Antonio 2022, pet. denied). "A parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *In re R.S.-T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.) (alteration omitted). Subsection (D) permits termination based upon only a single act or omission. *Id.* The time period relevant to a review of conduct and environment under statutory ground (D) is prior to the child's removal. *In re J.R.*, 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Here, the trial court heard testimony that Mother's persistent physical and emotional abuse exposed the child to an endangering environment. Mother and Father lived in Georgia until the child was two years old. Sarah Kennedy, the Department's caseworker, conceded Father did not contribute directly to the endangering environment or otherwise harm the child. Thus, to meet its burden under statutory ground (D), the Department had to prove by clear and convincing evidence that Father knowingly allowed the child to remain in an endangering environment. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D). On appeal the Department claims it has met its burden because Father knew Mother was a danger to the child and he left A.F.M. in Mother's care. The record, however, does not support the Department's position.

It is undisputed that sometime after the child turned two, Mother moved from Georgia and absconded with the child. Mother and the child then moved to several different states over the next several years before moving to Texas. Father was on federal probation and could not leave Georgia until 2016. When Father successfully completed his probation, he did not know where to locate Mother and the child. Father testified he informed the agency managing child support in Georgia that Mother absconded with the child; however, he was told the agency could not do

anything because she is the mother of the child. Father, who remained in Georgia, testified that he has not seen the child in over seven years.

Prior to Mother moving, Father testified he only visited Mother a few times and did not know much about her. While he did state that he "noticed something just wasn't right" with her, he elaborated that she would "treat [her older] kids like she was in the military; just have the kids cleaning up all the time and—it just wasn't normal[.]" Father did not consider Mother's behavior alarming because she had just left the military, and he reasoned she was stern because of her military experience. Father repeatedly testified that he never saw Mother abuse her children and he did not know she was mistreating her children. Father later clarified when he said Mother "just wasn't right" that she was "just different[,]" not that he suspected Mother was abusing her children or creating an endangering environment for A.F.M.

Father testified he never saw Mother "discipline [her children] physically." Father expounded he never saw the children with physical marks, cuts, bruises, broken bones, or any other indication that Mother was abusing them. Father also stated none of Mother's children made outcries of abuse to Father. While Father testified that he distanced himself from Mother because she would harass him and cuss him out, he stated he never saw anything that would indicate she was abusive towards the child.[3]

Kennedy did not dispute Father's testimony that he was unaware of Mother's propensity to abuse her children. Kennedy testified the Department was concerned that Father left the child in Mother's care even though he knew "how she was towards her older children." However,

---

[3] The Department also points out that Father said it was not safe for him to be around Mother and, if it was not safe for Father to be around Mother, the trial court could infer that Father knew it was not safe for A.F.M. to be in Mother's care. However, Father's testimony reflects that Father feared Mother may do something that would cause him to go to jail. Mother told Father that she played a role in getting the older kids' father "locked up." Father was on federal probation until 2016 and was concerned that Mother would take some sort of action that would jeopardize his freedom because "[s]he's the type, she'll come to the house, ring the doorbell and—no. I'm not safe with that."

Kennedy failed to elaborate what she meant by that statement and the Department did not present any evidence that Father knew about Mother's abusive behavior. Kennedy simply repeated Father "knew how [Mother] was and . . . he blocked her [phone number] because of her harassment." When asked what Father knew about Mother's propensity for violence or abuse of her children, Kennedy again repeated that Father knew "how she was towards her older children."

The only evidence proffered by the Department inferring Father may have been aware of Mother's abusive behavior came from the following exchange between the Department's counsel and Kennedy regarding Father's alleged testimony in a prior undisclosed hearing:

> Q: Now, Ms. Kennedy, do you recall [Father] providing sworn testimony to the Court that he was aware of the conditions that [A.F.M.] was living with [Mother]?
>
> A: Yes.
>
> Q: Okay. And did he provide a reason for why he never took action to remove [A.F.M.] from those dangerous conditions?
>
> A. He had just stated that [Mother] kept [A.F.M.] from him.

First, Kennedy simply acknowledged that Father testified in some unknown hearing that he was aware of the conditions that the child was subjected to while living with Mother. However, Kennedy does not elaborate, and the Department does not ask what those conditions are. Then, counsel asked why Father did not remove A.F.M. from the dangerous conditions, and Kennedy responded Mother kept the child from Father. This conclusory testimony can hardly be clear and convincing evidence that Father knowingly left the child in an endangering environment. *In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.) ("[C]onclusory testimony, such as the caseworker's, even if uncontradicted does not amount to more than a scintilla of evidence."). The only reference to dangerous conditions were counsel's characterization, not testimony from Kennedy. And, Kennedy never testified at trial—and the trial court never heard any evidence elicited at trial—that Father was aware of Mother's abusive behavior. Moreover, the

Department presented no evidence that Father should have known that Mother was exposing the child to harm prior to removal. Kennedy instead confirmed that Father never told her he was aware of Mother's abusive behavior.

In sum, Father's testimony establishes that he was unaware the environment created by Mother's conduct would endanger the child. His testimony further establishes that, while Mother may have at times harassed Father, he did not see anything that would indicate Mother was abusive towards A.F.M. The Department failed to present any evidence disputing Father's testimony. The only evidence the Department presented was a vague reference to testimony outside of the trial record and a vague reference that Father knew how Mother was towards her older children. The trial court's finding under statutory ground (D) did not hinge on credibility determinations in the face of conflicting evidence; rather, the evidence was conclusively insufficient to justify termination on that ground because there was no evidence that Father knew or should have known that Mother's conduct would create an endangering environment for the child. *See J.W.*, 645 S.W.3d at 750. On this record, we conclude that the Department's evidence, even when viewed in the light most favorable to the judgment, would not allow a reasonable factfinder to form a firm belief or conviction that Father knowingly placed or knowingly allowed A.F.M. to remain in conditions that endangered his physical or emotional well-being. *See In re I.R.M.*, No. 04-21-00278-CV, 2021 WL 6053733, at *3 (Tex. App.—San Antonio Dec. 22, 2021, no pet.).

Accordingly, Father's sole issue is sustained.

## CONCLUSION

Although we sustain Father's issue on statutory ground (D), Father did not challenge the sufficiency of the evidence supporting grounds (N) and (O) and we must accept the validity of those findings and affirm termination under those grounds. *See A.V.*, 113 S.W.3d at 362; *I.E.P.*,

2024 WL 3802517, at *2.  Therefore, we modify the trial court's termination order to delete the subsection (D) finding and affirm the termination order as modified.

Irene Rios, Justice